UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 10-60019-CIV-JORDAN
(Case No. 10-60508-CIV-JORDAN)

| | |
|---|---|
| CITICORP NORTH AMERICA, INC., *et al.,* | ) |
| | ) |
| Appellants, | ) |
| | ) |
| vs. | ) |
| | ) |
| OFFICIAL COMMITTEE OF UNSECURED | ) |
| CREDITORS OF TOUSA, INC., *et al.,* | ) |
| | ) |
| Appellees. | ) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TOUSA, INC.'S
SUBMISSION PURSUANT TO
COURT'S ORDER DATED FEBRUARY 15, 2011**

Plaintiff-appellee, the Official Committee of Unsecured Creditors of TOUSA, Inc., *et al.,* respectfully submits this memorandum in response to the Court's Order dated February 15, 2011. The Order directed the parties to submit supplemental briefs explaining how Judge Gold's opinion and reasoning in *3V Capital Master Fund, Ltd. v. Official Committee of Unsecured Creditors,* Case No. 10-cv-60017 [D.E. 131] ("the Transeastern Opinion"), if adhered to by this Court, would affect the issues in the pending appeals by the First and Second Lien Lenders (the "Lien Lenders"). The Order further directed the parties not to argue whether Judge Gold's ruling was correct or incorrect, but to assume for purposes of this submission that the ruling is correct.

The Committee has filed a notice of appeal with respect to the Transeastern Opinion and believes that the decision should be and will be reversed in all respects. However, in accordance

with the Order, we address here the effects of that decision if this Court adheres to it. As we explain below, adherence to the Transeastern Opinion would dispose of the Committee's fraudulent transfer claims against the Lien Lenders and may affect, but will not control, the disposition of the Committee's preferential transfer claim. As we further explain, however, any such decision by this Court, if rendered before the Eleventh Circuit has decided the Transeastern Appeal, would exceed this Court's jurisdiction and, in all events, would likely delay the ultimate resolution of this litigation and impose unnecessary burdens and costs on the Court and the parties, regardless of the ultimate outcome of the Transeastern Appeal. Given the present posture of this litigation, this Court should refrain from ruling on the pending Lien Lenders' appeals until disposition of the Transeastern Appeal.

I. **Adherence To Judge Gold's Decision Will Dispose Of The Committee's Fraudulent Transfer Claim And May Affect, But Will Not Control, The Preferential Transfer Claim.**

If, in deciding the Lien Lenders' appeals, this Court adheres to Judge Gold's decision in all respects, two of the holdings in the Transeastern Opinion are particularly relevant. First, Judge Gold held that the "clearly erroneous" standard of review for the bankruptcy court's factual findings should be "relaxed" in this case. Op. 44. Second, Judge Gold held that the Conveying Subsidiaries' transfer of liens to the Lien Lenders was not avoidable pursuant to 11 U.S.C. § 548 because the Conveying Subsidiaries received "reasonably equivalent value" in exchange for that transfer. Op. 60-91.

With respect to the fraudulent transfer claim before this Court, adherence to Judge Gold's decision on reasonably equivalent value would dispose of the Committee's fraudulent transfer

claims against the Lien Lenders, and obviate any need for this Court to decide any of the other fraudulent transfer-related issues raised in the Lien Lenders' appeals.[1]

The Transeastern Opinion may also affect, but will not control, disposition of the Committee's preferential transfer claim with respect to the federal income tax refund that TOUSA, Inc. received in 2008. In their appeal on that claim, the Lien Lenders challenge the bankruptcy court's finding, under section 547(b)(5), that the transfer would enable the Lien Lenders to receive more than they would receive under a Chapter 7 liquidation. Judge Gold's decision on reasonably equivalent value may affect the analysis of this Chapter 7 test. As the Committee has pointed out, if the Lien Lenders' claims and liens against the Conveying Subsidiaries are avoided under section 548, TOUSA, Inc. would be *solely* responsible for the entire debt owed to the Lien Lenders. On that assumption, the Lien Lenders were undersecured with respect to TOUSA, Inc., even accepting *the Lien Lenders' evidence* relating to the value of TOUSA, Inc.'s assets on the petition date. Because the Lien Lenders were undersecured, *by definition* the Chapter 7 test was satisfied. See Committee Brief [D.E. 112] at 209-211; Attachment to Letter to Judges Jordan and Gold, dated October 18, 2010. Thus, under the bankruptcy court's judgment avoiding the liens, the Chapter 7 test was plainly satisfied. However, adherence to Judge Gold's decision on reasonably equivalent value – and the corollary that the liens cannot be avoided under section 548 if the Conveying Subsidiaries received reasonably equivalent value – would preclude affirmance of the bankruptcy court judgment concerning the Chapter 7 test on that particular basis.

---

[1] There would be no need to address the Second Lien Lenders' challenge to the bankruptcy court's insolvency finding. The Lien Lenders also raise a host of objections to the fraudulent transfer remedies ordered by the bankruptcy court, none of which would need to be reached if this Court adopts Judge Gold's ruling.

3

A decision on the Chapter 7 test would, instead, require consideration of the other evidence on which the bankruptcy court relied. The bankruptcy court found that the liquidation analysis submitted by TOUSA in the main bankruptcy case was sufficient to prove the Chapter 7 test. That finding assumed that the liens would *not* be avoided under section 548, and therefore is *not* affected by Judge Gold's decision on reasonably equivalent value. See Committee Brief, at 201-209. The Lien Lenders challenge the validity of this bankruptcy court finding regarding the liquidation analysis. The resolution of that alternative basis for satisfying the Chapter 7 test, therefore, may depend on whether this Court adheres to the "relaxed" standard of clear-error review endorsed by Judge Gold. The Committee believes that the bankruptcy court's findings should be affirmed even under such a standard.

In short, the disposition of the Committee's preference claim is not controlled by the Transeastern Opinion. Adherence to that opinion may affect the preference claim, by requiring an analysis of the evidence supporting the bankruptcy court's findings on the Chapter 7 test, but those findings should be affirmed even assuming that Judge Gold's opinion is correct.

**II.     This Court Should Defer Further Action On These Appeals Until The Transeastern Appeal Has Been Decided**

Judge Gold's decision is now on appeal to the Eleventh Circuit. Because the issues in the Transeastern Appeal in the Eleventh Circuit are identical to, or in some cases inextricably related to, issues in the Lien Lenders' appeals, and in light of the posture of this litigation and other matters pending in the bankruptcy court, this Court should defer any further action on the Lien Lenders' appeals until the Eleventh Circuit has decided the Transeastern Appeal. There are two reasons this Court should stay its hand. First, it lacks jurisdiction to decide the issues that have now been appealed. Second, awaiting guidance from the Eleventh Circuit will conserve judicial resources, expedite the resolution of legal issues that are central to this and other litigation, spare

4

the parties from needless litigation expense, and avoid this Court's unnecessarily deciding legal issues that ultimately may be mooted by the Eleventh Circuit's decision.

> A. **In Light Of The Appeal Of Judge Gold's Opinion, This Court Lacks Jurisdiction To Address The Reasonably Equivalent Value Issue**

Since the issuance of this Court's February 15 Order, the Committee has filed a notice of appeal from Judge Gold's Opinion. That notice of appeal divests this Court of jurisdiction to decide whether the Conveying Subsidiaries received reasonably equivalent value in the July 31 Transaction, or whether the bankruptcy court's factual findings are subject to a "relaxed" standard of review.

The settled rule in the Eleventh Circuit, as elsewhere, is that the "'filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Consequently, once a notice of appeal is filed, the district court may not take any action that "directly affect[s] the issues already pending before [the appellate] court." *Green Leaf*, 341 F.3d at 1309; see also *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("A district court does not have the power to alter the status of the case as it rests before the Court of Appeals."); *Cibro Petroleum Prods., Inc. v. Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 106 (S.D.N.Y. 2001) ("Any actions that interfere with the appeal process or decide an issue identical to the one appealed are . . . impermissible.").

Under these principles, this Court lacks jurisdiction to decide the questions of reasonably equivalent value or what standard of review applies to the bankruptcy court's factual findings. Judge Gold's Opinion held that the Conveying Subsidiaries received reasonably equivalent value

5

in the July 31 Transaction, and that the "clearly erroneous" standard of review should be relaxed. Those judgments constitute the holding of the District Court for the Southern District of Florida on these issues in this adversary proceeding. They are now on appeal before the Eleventh Circuit. For this Court to decide the issues yet again would amount to a second judgment by the Southern District of Florida on the exact issues that are pending on appeal.

It makes no difference that Judge Gold heard the appeal of one group of defendants and not all three groups. Each appeal is merely one part of the same, single adversary proceeding that was prosecuted against the same defendants and produced the same findings of fact and conclusions of law. The issues that Judge Gold decided are not just similar to, or interconnected with, the issues in the Lien Lenders' appeals, but are *the same* issues. The Committee has argued from the start that the appeals of all of the defendants should therefore have been heard together. Because of the separate numbering of each defendant's appeal and the discretionary decisions of this Court, they were not. But such procedural happenstance does not alter the fact that there is only a single adversary proceeding, and that two of the issues in that proceeding—reasonably equivalent value and the proper standard of review—are now on appeal. Accordingly, this Court has no more authority to revisit those issues at this time than Judge Gold does.

This conclusion is strongly supported by the rationale behind the divestiture rule. A key purpose of the rule is to avoid the "danger [that] a district court and a court of appeals would be simultaneously analyzing the same judgment." *Griggs*, 459 U.S. at 59. In particular, the rule preserves scarce judicial resources by "spar[ing] the trial court from passing on questions that may well be rendered moot by the decision of the Court of Appeals." *Shewchun v. United States*, 797 F.2d 941, 943 (11th Cir. 1986). "[I]f both courts' rulings are identical, then efforts have been needlessly duplicated, and if the rulings are dissimilar, the district court has wasted its time

6

and effort." *Diamond Waste, Inc. v. Monroe County*, 869 F. Supp. 944, 946 (M.D. Ga. 1994) (deferring consideration of plaintiff's motion because similar issues in defendant's motion were already pending before the Eleventh Circuit); see also 20 Moore's Federal Practice, § 303.32[1] (Matthew Bender 3d ed.) (purpose of divestiture rule is "to promote judicial economy and avoid the confusion and inefficiency that might flow from putting the same issue before two courts at the same time").

This reasoning applies squarely here: Whatever the Eleventh Circuit decides as to reasonably equivalent value will bind all parties as law of the case, including the Lien Lenders. Disregard of the divestiture rule would also create very undesirable incentives. Adversary proceedings routinely involve multiple defendants. If an appeal of a district court decision involving one defendant did not freeze action by other judges hearing the appeals of other defendants, then defendants might rationally seek to shepherd their appeals before different judges of the same district court, in an effort to minimize the probability of suffering uniformly adverse judgments. This adversary proceeding, for example, involves three groups of defendants before two Judges of this Court. What if there were five defendants before five Judges? It strains credulity, and certainly does significant harm to the purpose of the divestiture rule, to think that each judge could revisit the same issue after it is appealed to the circuit court.

For these reasons, this Court lacks authority to decide the questions of reasonably equivalent value and the appropriate standard of review while those issues are on appeal.

### B.   As a Prudential Matter, This Court Should Delay Any Action Pending A Decision on the Transeastern Appeal

Even if this Court were to conclude that it has jurisdiction, the prudent course here is to defer any further action on the Lien Lenders' cases until a decision has been reached by the Eleventh Circuit in the Transeastern Appeal. The Transeastern Opinion substantially affects the

Lien Lenders' appeals and many other proceedings arising from and related to the TOUSA bankruptcy. Prompt resolution of the Transeastern Appeal – however it comes out – is a matter a paramount importance in *all* of those proceedings. If this Court were to decide the Lien Lenders' appeals while the Transeastern Appeal is pending, the practical effect would be to delay resolution of the Eleventh Circuit appeal, increase the parties' litigation costs, or both. There are no practical benefits from such a premature decision that could offset those substantial harms.

This Court is already well aware of the reasons that the issues on appeal are critically important to the parties in this case. But those issues are also critical to other parties in other cases arising from the July 31 Transaction, including a breach of fiduciary duty lawsuit against the directors and officers of the Conveying Subsidiaries and a fraudulent conveyance lawsuit against the Falcone entities.[2] And all of these cases, in turn, are critical to the ultimate resolution of the bankruptcy proceedings. Given the present uncertainty about the outcome of the fraudulent transfer litigation, the plan confirmation process simply cannot go forward. In light of Judge Gold's decision and the pending Eleventh Circuit appeal, the Committee has agreed to stay all proceedings in the other cases arising from the July 31 Transaction, and has suspended its efforts to move forward with plan confirmation. Until a decision is rendered by the Eleventh Circuit on the Transeastern Appeal, the parties and the Tousa estates are largely paralyzed.

Moreover, uncertainty about the outcome of the Transeastern Appeal presents a formidable obstacle to any consensual resolution of the parties' disputes. Over the past several months there has been an active mediation effort conducted by a court-ordered mediator seeking to resolve the issues between the Lien Lenders and the Committee, including the cases before

---

[2] The Falcones received approximately $50 million as part of the July 31 Transaction.

this Court. There is little doubt, from the Committee's perspective, that settlement prospects would be much improved by a final decision on fraudulent transfer liability.

For all of these reasons, prompt resolution of the Transeastern Appeal is critical. A decision in the Lien Lenders' appeals while the Transeastern Appeal is pending in the Eleventh Circuit is almost certain to delay the ultimate resolution of the Transeastern Appeal, increase the parties' litigation costs, or both. If this Court renders such decisions, adhering in all respects to the Transeastern Opinion, those decisions will be appealed by the Committee. If those appeals are consolidated with the Transeastern Appeal in the Eleventh Circuit, that consolidation would likely delay briefing and argument. The Eleventh Circuit appeals in the Lien Lenders' cases would begin later (perhaps significantly later) than the Transeastern Appeal, and consolidation would likely require postponement of briefing in the consolidated cases to allow the Lien Lenders' appeals to "catch up" with the first appeal. The result would be a delay of potentially many months before the central issue in this bankruptcy – whether the Conveying Subsidiaries received reasonably equivalent value – was ready for consideration by the Eleventh Circuit. And if the Lien Lenders' appeals raise additional issues, beyond the issues presented in the Transeastern Appeal, they would likely require the Eleventh Circuit to take more time to render its decision. If an Eleventh Circuit appeal in the Lien Lenders' cases is *not* consolidated with the Transeastern Appeal, the parties will be forced to incur additional costs in briefing and arguing two appeals, with substantially (or possibly completely) overlapping issues.

A decision by this Court in the Lien Lenders' appeals will not produce any significant advantages that would offset those costs. Most importantly, such a decision would not hasten the ultimate resolution of this (or related) litigation. If Judge Gold's decision is ultimately affirmed, the fraudulent transfer litigation against the Lien Lenders will promptly come to an end, even if

this Court has not yet ruled on the Lien Lenders' appeals. If Judge Gold's decision is reversed, this Court will be required to address the multitude of issues, including issues relating to remedy (that will never need to be decided if Judge Gold's decision is affirmed), and this too will occur even if this Court has not yet ruled on the Lien Lenders' appeals. Reversal would also make clear that the remaining issues, which are inextricably tied to the bankruptcy court's factual findings, must be resolved by applying the traditional "clearly erroneous" standard of review.[3]

A reversal of Judge Gold's decision would also clarify and simplify this Court's consideration of the preferential transfer claim. In addition to making clear that the bankruptcy court's findings on the Chapter 7 test are subject to review under the traditional "clearly erroneous" standard, reversal would make clear that the Chapter 7 test can properly be applied on the assumption that the liens granted by the Conveying Subsidiaries are avoided. Reversal of Judge Gold's decision concerning the standard of review for factual findings, or concerning reasonably equivalent value, therefore would strongly support (if not require) affirmance of the bankruptcy court's ruling on the Chapter 7 test. If Judge Gold's decision is ultimately reversed,

---

[3]  Although we will not argue here the merits of Judge Gold's decision, there are – *at the very least* – substantial grounds for appeal from that ruling. The Transeastern Opinion adopts legal arguments that were abandoned and thus waived by the Transeastern Lenders on appeal. The District Court applies the wrong standard of review, applying a "relaxed" standard of review for factual findings that has been expressly rejected by well-established Eleventh Circuit precedent. The District Court also improperly makes its own factual findings and ignores the factual findings of the Bankruptcy Court, as well as the documents, testimony, and credibility determinations supporting the Bankruptcy Court's findings. The Transeastern Opinion also mistakenly shifts the burden of production as to the indirect benefits allegedly received by the Conveying Subsidiaries and makes no real effort to quantify whether these indirect benefits were "reasonably equivalent" to the more than $400 million in obligations and liens that the Conveying Subsidiaries incurred. Furthermore, the central thesis of the Transeastern Opinion – that it "is enough" value as long as "imminent default was avoided" for some short (and undefined) period of time – is entirely lacking in legal or logical support. In any event, the very premise of this thesis is false since the evidence at trial showed that the July 31 Transaction did *not* improve the odds that the Conveying Subsidiaries would remain going concerns, even briefly. Accordingly, if this Court concludes that it may properly reach the merits of these issues and that it is prudent to do so, it should reject the flawed conclusions of the Transeastern Opinion.

there is a substantial likelihood that any decision in favor of the Lien Lenders on the preferential transfer claim, if based on adherence to Judge Gold's decision, will also be reversed.

In short, whether the Transeastern Appeal is decided in favor of the Committee or in favor of the defendants, a decision by this Court on the Lien Lenders' appeals will delay rather than advance the Eleventh Circuit's resolution of this case, and will lead to the needless waste of the Court's and the litigants' resources.

**III.    If The Court Elects Not To Await The Eleventh Circuit's Decision In The Transeastern Appeal And Is Otherwise Disposed To Adhere To Judge Gold's Decision, It Should Issue A Final Judgment Following Judge Gold's Ruling On Judicial Comity Grounds**

Jurisdictional and prudential concerns weigh strongly in favor of this Court's waiting for the Eleventh Circuit decision in the Transeastern Appeal before taking further action in the Lien Lenders' appeals. However, if the Court believes that it is both authorized to act and that it is prudent to do so – and if it is inclined to adhere to Judge Gold's ruling (even though the Committee believes it is badly flawed) – the correct and efficient result would be for this Court to enter a final judgment adopting Judge Gold's ruling on the fraudulent transfer claims only. See Federal Rules of Civil Procedure 54(b).[4] In doing so, this Court could simply follow the general practice that "judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings." *United States v. Anaya,* 509 F. Supp. 289, 293 (S.D. Fl. 1980) (en banc); *see also Fricker v. Town of Foster*, 596 F. Supp. 1353, 1356 (D.R.I. 1984); *Mueller v. Allen*, 514 F. Supp. 998, 1000-1001 (D. Minn. 1981); *Buna v. Pac. Far East Line, Inc.,* 441 F. Supp. 1360, 1365 (N.D. Cal. 1977). A decision adopting Judge Gold's decision on reasonably equivalent value for the sake of judicial comity and consistency would be short, straightforward

---

[4] Rule 54(b) applies to adversary proceedings in bankruptcy, Fed. R. Bankr. P. 7054(a), and to bankruptcy appeals before the district courts in particular. *See In re Millers Cove Energy Co., Inc.*, 128 F.3d 449, 452 (6th Cir. 1997); *Matter of Pac. Caribbean Shipping, Inc.*, 789 F.2d 1406, 1407 (9th Cir. 1986).

and could be issued with dispatch. If issued under Rule 54(b), it could be immediately appealed to the Eleventh Circuit, where it could be consolidated with the Transeastern Appeal with a minimum of delay. This Court would have no need to reach at this time the more complicated preferential transfer claim, and could avoid the substantial risk of wasted effort that is unavoidable if this Court decides the preference claim before receiving the Eleventh Circuit's ruling on the Transeastern appeal. Such an approach would also simplify the Eleventh Circuit's resolution of the Transeastern Appeal, because it would not introduce an entirely new and distinct set of issues into an appeal that already raises complex issues. If this Court elects to issue an opinion, a Rule 54(b) final judgment adopting Judge Gold's reasonably equivalent value ruling as a matter of judicial comity is the approach most likely to lead to the earliest possible resolution of this litigation and to minimize the litigation costs incurred in reaching a resolution.

## CONCLUSION

For the reasons stated above, this Court lacks jurisdiction to rule on the issues involved in the Transeastern Appeal and, in any event, should exercise its discretion as a prudential matter to take no action until the Eleventh Circuit has decided that appeal.

Dated March 15, 2011

Respectfully submitted,

By: /s/ Patricia A. Redmond
Patricia A. Redmond (Fla. Bar # 303739)
David C. Pollack (Fla. Bar # 0362972)
STEARNS WEAVER MILLER
  WESSLER ALHADEFF & SITTERSON, P.A.
150 West Flagler Street, Suite 220
Miami, FL 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395
predmond@stearnsweaver.com

ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
Lawrence S. Robbins*
Donald J. Russell*
Michael L. Waldman*
1801 K Street N.W., Suite 411-L
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
lrobbins@robbinsrussell.com

* admitted *pro hac vice*

*Attorneys for the Official Committee of Unsecured Creditors of TOUSA, Inc., et al.*

## CERTIFICATE OF SERVICE

  I CERTIFY that on March 15, 2011, I caused the electronic filing of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List by transmission of Notice of Electronic Filing generated by CM/ECF or by E-Mail.


           By: */s/ Patricia A. Redmond*

**OCUC of TOUSA, Inc., et al. v. Citicorp North America, Inc., et al.**
**Appeals 10-60019 and 10-61731 / 10-60018 and 10-61681  and 10-60508**
<u>**SERVICE LIST**</u>

| | |
|---|---|
| Paul Steven Singerman | singerman@bergersingerman.com |
| Paul Avron | pavron@bergersingerman.com |
| **BERGER SINGERMAN P.A.,** *Local Counsel* | |
| 200 S. Biscayne Blvd., Suite 1000 | Telephone:  305.775.9500 |
| Miami, FL   33131 | Facsimile:  305.714.4340 |
| – and – | |
| Paul M. Basta | pbasta@kirkland.com |
| Richard M. Cieri | rcieri@kirkland.com |
| M. Natasha Labovitz | nlabovitz@kirkland.com |
| **KIRKLAND & ELLIS, LLP** | |
| 153 East 53 Street | Telephone:   212.446.4800 |
| New York, NY   10022 | Facsimile:  212.446.4900 |
| – and – | |
| Beth A. Williams | Beth.Williams@kirkland.com |
| Daniel T. Donovan | ddonovan@kirkland.com |
| Matthew E. Papez | mpapez@kirkland.com |
| Jeffrey S. Powell | jpowell@kirkland.com |
| **KIRKLAND & ELLIS, LLP** | |
| 655 15 Street, NW | Telephone:   202.879.5000 |
| Washington DC   20005 | Facsimile:  202.879.5200 |

*Counsel for TOUSA, Inc., et al.,* **Debtors**
- - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Patricia A. Redmond | predmond@swmwas.com |
| David C. Pollack | dpollack@swmwas.com |
| **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**, *Local Counsel* | |
| 150 W. Flagler Street, Suite 2200 | Telephone: 305.789.3200 |
| Miami, FL   33130 | Facsimile:  305.789.3395 |
| – and – | |
| Lawrence S. Robbins | lrobbins@robbinsrussell.com |
| Donald J. Russell | drussell@robbinsrussell.com |
| Alan D. Strasser | astrasser@robbinsrussell.com |
| Michael L. Waldman, | mwaldman@robbinsrussell.com |
| Mark A. Hiller | mhiller@robbinsrussell.com |
| **ROBBINS, RUSSELL, ENGLERT, ORSECK,  UNTEREINER & SAUBER LLP**, | |
| 1801 K Street, Suite 411-L | Telephone:  202-775-4500 |
| Washington, DC 20006 | Facsimile:  202.775.4510 |

*Fraudulent Conveyance Adversary Proceeding Special Counsel*
*Counsel for Official Committee of Unsecured Creditors of TOUSA, Inc., et al,* **Plaintiff / Appellee**
- - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Allan E Wulbern | awulbern@smithhulsey.com |
| Stephen D. Busey | busey@smithhulsey.com |
| **SMITH HULSEY & BUSEY** | |
| 225 Water Street, Suite 1800 | Telephone:  904.359.7700 |
| Jacksonville, FL   32202 | Facsimile:  904.359.7708 |
| – and – | |
| Amy D. Harris | aharris.ecf@srbp.com |
| Edward J. Peterson III | epeterson.ecf@srbp.com |
| Richard Craig Prosser | rprosser@srbp.com |
| **STICHTER, RIEDEL, BLAIN & PROSSER, P.A.** | |
| 110 East Madison Street, Suite 200 | Telephone:  813.229.0144 |
| Tampa, FL  33602-4718 | Facsimile:  813.229.1811 |
| – and – | |
| Joseph H. Smolinsky | joseph.smolinsky@weil.com |
| **WEIL GOTSHAL** | |
| 767 Fifth Avenue | Telephone:  212.310.8767 |
| New York, NY 10153 | Facsimile:  212.310.8007 |
| – and – | |
| Thomas J. Hall | thall@chadbourne.com |
| Seven R. Rivera | srivera@chadbourne.com |
| Thomas J. McCormack | tmccormack@chadbourne.com |
| **CHADBOURNE & PARKE LLP** | |
| 30 Rockefeller Plaza | Telephone:  212.408.5100 |
| New York, NY   10112 | Facsimile:  212.541.5369 |

*Counsel for Citicorp North America, Inc., in its capacity as Administrative Agent for the First Lien Revolver and First Lien Term Loan Credit Agreement*, **Defendant / Appellant**

- - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Scott L. Baena | sbaena@bilzin.com |
| Jeffrey I Snyder | jsnyder@bilzin.com |
| **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**, *Local Counsel* | |
| 200 S. Biscayne Blvd., Suite 2500 | Telephone:  305.374.7580 |
| Miami, FL   33131 | Facsimile:  305.374.7593 |

*Co-Counsel to Wells Fargo, as Successor Administrative Agent under that Certain  Second Lien Term Loan Credit Agreement, and an Informal Group of Holders of Second Lien Term Loan Lenders*, **Defendants / Appellants**

- - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Evan D. Flaschen | evan.flaschen@bgllp.com |
| Gregory W. Nye | gregory.nye@bgllp.com |
| Richard Whiteley | richard.whiteley@bgllp.com |
| Daynor M. Carman | daynor.carman@bgllp.com |
| **BRACEWELL & GIULIANI LLP** | |
| 225 Asylum Street, Suite 2600 | Telephone:  860.947.9000 |
| Hartford, CT   06013 | Facsimile:  860.246.3201 |

| | |
|---|---|
| – and – | |
| David M. Levine | dml@LKLlaw.com |
| Lawrence A. Kellogg | lak@LKLlaw.com |
| Robin J. Rubens | rjr@LKLlaw.com |
| Jeffrey C. Schneider | jcs@LKLlaw.com |

**LEVINE KELLOGG LEHMAN SCHNEIDER & GROSSMAN LLP**
201 South Biscayne Blvd.
Miami Center – 34th Floor                        Telephone:  305.403.8788
Miami, FL   33131                                Facsimile:  305.403.8789

*Local Counsel to several members of an Informal Group of Holders of Second Lien Term Loan Lenders*, **Defendants / Appellants**

- - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| John H. Genovese | jgenovese@gjb-law.com |
| Paul J. Batista | pbattista@gjb-law.com |

**GENOVESE JOBLOVE & BATTISTA, P.A.**, *Local Counsel*
100 SE 2 Street, 44 Floor                        Telephone:  305.349.2300
Miami, FL   33131                                Facsimile:  305.349.2310
– and –

| | |
|---|---|
| David S. Rosner | drosner@kasowitz.com |
| Andrew K. Glenn | aglenn@kasowitz.com |

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
1633 Broadway                                    Telephone:  212.506.1700
New York, NY   10019

*Counsel to Aurelius Named-Entities, GSO Named-Entities, and Carlyle Strategic Partners (collectively, the "Noteholders"),* **Defendants / Appellants**

- - - - - - - - - - - - - - - - - - - - - - - -

Ceci Culpepper Berman                            cberman@fowlerwhite.com
**FOWLER WHITE BOGGS BANKER**
501 E. Kenneth Blvd., Suite 1700                 Telephone:  813.222.1136
Tampa, FL   33602                                Facsimile:  813.229.8313
– and –

| | |
|---|---|
| Aaron D. VanOort | avanoort@faegre.com |
| Melina K. Williams | mwilliams2@faegre.com |
| Stephen M. Mertz | smertz@faegre.com |

**FAEGRE & BENSON LLP**
90 South Seventh Street, #2200                   Telephone:  612.766-7000
Minneapolis, MN   55402                          Facsimile:
– and –
Nancy A. Copperthwaite                           Nancy.Coppeerthwaite@akerman.com
**AKERMAN SENTERFITT**, *Local Counsel*
1 SE 3rd Avenue, 25th Floor                      Telephone:  305.374.5600
Miami, FL   33131                                Facsimile:  305.374.5095
– and –

| | |
|---|---|
| Michael I. Goldberg | michael.goldberg@akerman.com |
| **AKERMAN SENTERFITT**, *Local Counsel* | |
| 350 East Las Olas Blvd., Suite 1600 | Telephone:  954.463.2700 |
| Fort Lauderdale, FL   33301-2229 | Facsimile:  954.463.2224 |
| – and – | |
| Andrew M. LeBlanc | aleblanc@milbank.com |
| Andrew Beirne | abeirne@milbank.com |
| Atara Miller | amiller@milbank.com |
| Alan J. Stone | astone@milbank.com |
| **MILBANK, TWEED, HADLEY & MCCLOY LLP** | |
| 1 Chase Manhattan Plaza | Telephone:  212.530.5287 |
| New York, NY   10005 | Facsimile:  212.530.5219  or 212.822.5057 |

*Counsel for the "Senior Transeastern Lenders,"* **Defendants**

- - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Meghan McCurdy | mmccurdy@whitecase.com |
| David G. Hille | dhille@whitecase.com |
| **WHITE & CASE LLP** | |
| 1155 Avenue of the Americas | Telephone:  212.819.8200 |
| New York, NY   10036 | Facsimile:  212.354.8113 |

*Counsel for Deutsche Bank Trust Company Americas, Highland Named-Entities, Jasper CLO Ltd., Loan Funding VII LLC, Quadrangle Master Funding Ltd.*

- - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Jennifer Gertrude Altman | jaltman@bsfllp.com |
| **BOIES SCHILLER & FLEXNER LLP** | |
| 100 SE 2nd Street, #2800 | Telephone:  305.539.8400 |
| New York, NY   10036 | Facsimile:  305.539.1307 |
| – and – | |
| Eric J. Brenner | ebrenner@bsfllp.com |
| Philip C. Korologos | pkorologos@bsfllp.com |
| **BOIES SCHILLER & FLEXNER LLP** | |
| 575 Lexington Avenue, 7th Floor | Telephone:  212.446.2315 |
| New York, NY   10036 | Facsimile:  212.446.2350 |

*Counsel for Monarch Master Funding Ltd., Trilogy Portfolio Company, LLC*

- - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| Charles M. Tatelbaum | ctatelbaum@adorno.com |
| **ADORNO & YOSS** | |
| 350 E. Las Olas Blvd., Suite 1700 | Telephone:  954.766.7820 |
| Fort Lauderdale, FL   33301 | Facsimile:  954.621.4198 |
| – and – | |

| | |
|---|---|
| James M. Cretella | jcretella@oshr.com |
| Jonathan N. Helfat | jhelfat@oshr.com |

**OTTERBOURG STEINDLER HOUSTON & ROSEN PC**

230 Park Avenue, 29th Floor  Telephone:  212.661.9100
New York, NY   10169  Facsimile:  212.
– and –

| | |
|---|---|
| Nury Agudo | nury.agudo@goldbergkohn.com |
| Richard M. Kohn | richard.kohn@goldbergkohn.com |
| William C. Meyers | william.meyers@goldbergkohn.com |

**GOLDBERG KOHN LTD.**

55 E Monroe Street, Suite 3300  Telephone:  312.201.4000
New York, NY   10169  Facsimile:  312.

*Counsel for Commercial Finance Association, Amicus Curiae*

- - - - - - - - - - - - - - - - - - - - - - - -

Michael Winschuh  mw@primeshares.coms

**PRIMESHARES WORLD MARKETS, LLC**

261 Fifth Avenue, 22nd Floor  Telephone:  212.889.1937
New York, NY   10016  Facsimile:  212.889.2232

*Notice of Appearance at ECF No. 118 (10-cv-60019)*

- - - - - - - - - - - - - - - - - - - - - - - -

Steven D. Schneiderman  steven.d.schneiderman@usdoj.gov

**OFFICE OF THE UNITED STATES TRUSTEE**

51 SW 1st Avenue, Suite 1204
Miami, FL   33130