# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case No. 10-60017-CIV-Gold**
L.T. Nos. 08-10929-JKO & 08-01435-JKO

In re:

TOUSA, INC., *et al.*,

      Debtors.

3V CAPITAL MASTER FUND LTD., *et al.*

      Appellants,

  vs.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TOUSA, INC., *et al.*,

      Appellees,

  and

TOUSA, INC., *et al.*,

      Appellees.

# TRANSEASTERN LENDERS' MOTION
# FOR LIMITED REHEARING
# ON THE CONDITIONAL RELEASE OF THE POSTED BONDS
# AND SUPPORTING MEMORANDUM

Appellants, a collection of financial entities (the "Transeastern Lenders")[1] that loaned approximately $421 million in 2005 to a homebuilding joint venture involving TOUSA, Inc. ("TOUSA") and TOUSA Homes, L.P. ("TOUSA Homes"), move for a limited rehearing on the conditional release of the posted bonds to clarify, alter, or amend a portion of the order of this Court pursuant to Bankruptcy Rule 8015 and Federal Rule of Civil Procedure 59(e).

## PRELIMINARY STATEMENT

In this Court's February 11, 2011, Opinion and Order on Appeals by Transeastern Lenders (the "Order"), the Court quashed all liability of the Transeastern Lenders and declared the remedies as to the Transeastern Lenders null and void. The Court further ordered that the bonds posted by the Transeastern Lenders to secure a stay of execution of the judgment of the Bankruptcy Court be discharged but ordered that the bonds "shall not be discharged if any Party files an appeal of this decision in which case the bonds shall remain in effect pending resolution of any appeals." (Order at 112-13.) The Transeastern Lenders bring this Motion to request that the Court reconsider the condition attached to the discharge of the bonds.[2]

---

[1] The Transeastern Lenders are defined in Appendix A. The Transeastern Lenders were referred to as the "Senior Transeastern Lenders" prior to this appeal and are so referenced in decisions of the bankruptcy court.

[2] The Transeastern Lenders also request that those of the Transeastern Lenders that posted cash with the Bankruptcy Court to stay the execution of the judgment be permitted to receive a return of their posted cash without any condition on its release.

{M3023760;1} - 2 -

Because the question of the discharge of the bonds arose only as a result of the Order, the parties have not presented arguments on the issue, and the Court has not had occasion to consider the meaning and implication of the terms of the Transeastern Lenders' bonds. The Transeastern Lenders submit that the Court would benefit from additional briefing on this issue, and seek to clarify, alter, or amend that portion of the Order conditionally staying the discharge of bonds pending resolution of any appeal.

Supersedeas bonds with language identical to that in the Transeastern Lenders' bonds are routinely discharged when the appellant has "substantially prevailed" on appeal, as the Transeastern Lenders have here. The posted bonds should therefore be discharged according to their terms and according to governing precedent.

Moreover, the bonds should be discharged because there no longer is a judgment enforceable against the Transeastern Lenders, making the bonds unnecessary. Supersedeas bonds posted pursuant to Rule 7062 of the Federal Rules of Bankruptcy Procedure (and Rule 62 of the Federal Rules of Civil Procedure) are posted as a condition to a "Stay of Proceedings to Enforce a Judgment." With no judgment for the Committee to enforce against the Transeastern Lenders, the Transeastern Lenders (and, as discussed below, the estate) should not have to bear the cost of the bonds. Requiring bonds to be posted where, as here, there is no enforceable judgment is akin to prejudgment attachment, which the Committee has not sought and to which it is not entitled.

Finally, the discharge of the bonds should be unconditional so as to prevent further injury to the TOUSA estate, its creditors, and the Transeastern Lenders. The Transeastern Lenders have incurred millions of dollars in bonding premiums. These costs are paid annually up front but are refundable on a pro rata basis upon discharge. As such, thousands of dollars in bonding premium are accrued **each day** the bonds remain in effect. Pursuant to Rule 8014 of the Federal Rules of Bankruptcy Procedure, the bond premiums are taxable against the TOUSA estate as administrative costs. Maintaining the bonds during the pendency of a subsequent appeal, could therefore have the unwanted effect of harming all TOUSA stakeholders.[3]

## RELEVANT PROCEDURAL HISTORY

On October 30, 2009, the Bankruptcy Court for the Southern District of Florida entered the Amended Findings of Fact and Conclusions of Law (Case No. 08-01435-JKO,[4] D.E. 722, which amends and replaces the Findings of Fact and Conclusions of Law (D.E. 658)) and the Amended Final Judgment (D.E. 721, which amends and replaces the Final Judgment (D.E. 659)) (collectively, the "Final Judgment"), ordering the Transeastern Lenders to disgorge over $403 million received in repayment of their valid antecedent debt, and to pay prejudgment interest for a total

---

[3] *See* the Affidavit of Robert G. Burns, submitted on February 9, 2010, in connection with the Transeastern Lenders' Opposition to Motion to Stay Briefing, or, in the Alternative, to Dismiss (Case No. 10-60017-CIV-JSG (D.E. 21)) (the "Aff. of Robert G. Burns"), noting that as of December 22, 2009, Monarch alone had paid $701,558.91 in bond premiums. (Aff. of Robert G. Burns ¶¶ 8-9.) To the extent the Court needs specific information on the costs incurred by each of the Transeastern Lenders, the Transeastern Lenders would be prepared to provide that information under seal.

[4] All docket entry references are to the underlying adversary proceeding, Case No. 08- 01435-JKO, unless otherwise specified.

{M3023760;1} - 4 -

disgorgement of more than $480 million. At the same time, the Bankruptcy Court entered the Order on Motions for Stay Pending Appeal (D.E. 723, the "<u>Bankruptcy Court Bonds Order</u>"). The Bankruptcy Court Bonds Order granted a stay of the Final Judgment subject to the defendants' posting adequate bonds. (*Id.* at 5.) The Bankruptcy Court directed the Transeastern Lenders to post bonds in the aggregate amount of $531,182,705.00. (*Id.* at 7-8.) On November 20, 2009, this Court affirmed the Bankruptcy Court Bonds Order and set a new deadline of December 22, 2009 for the posting of cash or bonds to secure a stay of enforcement of the judgment pending appeal. (*Id.*)

On December 22, 2009, many of the Transeastern Lenders posted supersedeas bonds or cash with the Clerk of the Court (collectively, the "<u>Bonds</u>") to stay the enforcement of the Final Judgment. (*See* D.E. 820-26, 828-32, 834-36 (Notices of Filing Surety Bond).)

On February 11, 2011, this Court entered the Order on the Transeastern Lenders' appeal from the Final Judgment, ordering that:

> (i) the bankruptcy court's order is quashed as it relates to the liability of the Transeastern Lenders; (ii) the bankruptcy court's imposition of remedies as to Transeastern Lenders is null and void; (iii) all bonds deposited by the Transeastern Lenders in response to the bankruptcy court's order on Motion for Stay Pending Appeal are discharged, *however, such funds shall not be discharged if any Party files an appeal of this decision in which case the bonds shall remain in effect pending resolution of any appeals*; (iv) the additional appeals pending before this Court filed by the Transeastern Lenders, all of which were contingent upon a decision concerning liability, are dismissed as moot; and (v) all appeal proceedings before this Court concerning the Transeastern Lenders are closed.

(Order at 112-13 (emphasis added).)

# ARGUMENT

## I. THE TERMS OF THE BONDS REQUIRE THAT THEY BE UNCONDITIONALLY DISCHARGED

A supersedeas bond is a contract with the surety. The question of whether a supersedeas bond must be discharged is therefore governed by the terms of the bond itself. As courts recognize, "[t]he extent to which the surety on an appeal bond is bound is determined by the terms of the bond." *Aetna Casualty & Sur. Co. v. LaSalle Pump & Supply Co., Inc.*, 804 F.2d 315, 317 (5th Cir. 1986); *see also Crane v. Buckley*, 203 U.S. 441, 447 (1906) (holding that "the obligation of sureties upon bonds [is] not to be extended by implication or enlarged construction of the terms of the contract entered into."); *Neeley v. Bankers Trust Co. of Texas*, 848 F.2d 658, 659 (5th Cir. 1988) (noting that a supersedeas bond "being a contract, is controlled by the language in the bond."); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572, 1574 (Fed. Cir. 1991) (finding that the "terms of an appeal bond determine the extent to which the surety on the bond is bound."). When the terms of a bond are unambiguous, the "court's obligation is to enforce the plain language of the contract." *Kirkland v. Ocean Key Assocs., Ltd.*, No. CV 103-050, 2007 WL 3343083, at *2 (S.D. Fla. Nov. 8, 2007); *see also, Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 734 F. Supp. 2d 1304 (S.D. Fla. 2010) (noting that courts must follow "clear and unambiguous" contractual language).

The terms of the Transeastern Lenders' Bonds unambiguously provide that complete discharge is a necessary consequence of the Order. Most of the Bonds posted by the Transeastern Lenders state that:

> NOW THEREFORE, the condition of the above obligation is such that ***if the [Principal] shall prosecute this appeal to effect*** and (1) shall satisfy its pro rata share of the Final Judgment, together with interest and costs, including, as may be ordered, attorneys' fees and reasonable expenses, if the Final Judgment is affirmed or this appeal is dismissed, or (2) shall satisfy its pro rata share of the Final Judgment as modified on appeal, together with such interest and costs as may be adjudged and awarded on appeal, ***then the above obligation is to be void***; otherwise it shall remain in full force and effect.[5]

The remaining Transeastern Lender Bonds state that:

> NOW THEREFORE, the condition of the above obligation is such that ***if [the Transeastern Lender] shall pay the Judgment or such part of the Judgment which is not reversed***, and damages, interest and costs, including, as ordered, attorney's fees and reasonable expenses, ***then the above obligation is to be void***, otherwise to remain in full force and effect.[6]

The terms of both form of Bond have been interpreted uniformly for more than 100 years to require the release of the bonds on reversal of the secured judgment. The language in the Transeastern Lenders' Bonds is consistent with standard provisions found in supersedeas bonds which provide that they must be discharged if the underlying judgment is "reversed" or prosecuted "to effect." *See, e.g.*, *Rand-Whitney*

---

[5] *See* supersedeas bonds filed in connection with the Notices of Filing Surety Bond in Compliance With the Order on Motions for Stay Pending Appeal (D.E. 723), dated December 22, 2009 (D.E. 823-26, 828, 830-32) (emphasis added). The Transeastern Lenders provided the Committee with copies of these supersedeas bonds at the time of their filing. To the extent the Court would like to review these supersedeas bonds, the Transeastern Lenders are prepared to provide a copy of the bonds under seal.

[6] *See* supersedeas bonds filed in connection with the Notices of Filing Surety Bond in Compliance With the Order on Motions for Stay Pending Appeal (D.E. 723), dated December 22, 2009 (D.E. 820-22, 829, 834-36) (emphasis added). The Transeastern Lenders provided the Committee with copies of these supersedeas bonds at the time of their filing. To the extent the Court would like to review these supersedeas bonds, the Transeastern Lenders are prepared to provide a copy of the bonds under seal.

{M3023760;1} - 7 -

*Containerboard L.P. v. Town of Montville*, 245 F.R.D. 65, 67 (D. Conn. 2007) (interpreting the "to effect" language and noting that the language used in supersedeas bonds is often boilerplate "dating back more than a century"). These terms of art mean that the appellant must "substantially prevail" for the supersedeas bond to be discharged. *See Crane*, 203 U.S. at 447 ("[P]rosecuting [an] appeal to effect . . . is an expression substantially equivalent to prosecuting his appeal with success; to make substantial and prevailing his attempt to reverse the decree or judgment awarded against him."); *Gay v. Parpart*, 101 U.S. 391, 391-92 (1879) (holding that if "on the final disposition of a writ of error or appeal, the judgment or decree brought under review is not substantially reversed, it is affirmed, and the writ of error or appeal has not been prosecuted with effect").

The body of case law discussing whether bonds with similar language should be discharged is instructive, despite the fact that it deals most often not with complete reversals -- as is the case here -- but with circumstances like the partial remand or reversal of a judgment and retrial as to damages. *See, e.g., Neeley*, 848 F.2d at 660 (discharging supersedeas bond because appeal was prosecuted "with effect" where the entire award of money damages was vacated, even when remand for a new trial on damages was necessary); *Aetna Casualty & Sur. Co.*, 804 F.2d at 317 (appeal successfully prosecuted and surety bond discharged where the judgment was reversed in part and remanded for the taking of additional evidence on damages); *compare Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1071 (10th Cir. 2008) (bond is still enforceable and appeal is not prosecuted "to effect" because appellant did not "substantially prevail" where appellant's liability was

affirmed and some categories of damages were not vacated); *Beatrice Foods Co.*, 930 F.2d at 1576 (surety remained bound and the appeal was not prosecuted "to effect" because the judgment was not "substantially reversed" where the appellant had "merely succeeded in having the case remanded for recomputation of damages."); *Franklinville Realty Co. v. Arnold Constr. Co.*, 132 F.2d 828, 829 (5th Cir. 1943) (refusing to discharge surety because "the judgment on the former appeal was not a judgment of reversal but one of affirmance with a reversal limited to [ ]whether the judgment it had obtained should be for the same or a less sum."). Having "substantially prevailed" on their appeal, the Transeastern Lenders' bonds should be unconditionally discharged in accordance with their terms.

## II. THE BONDS SHOULD BE DISCHARGED BECAUSE THERE IS NO JUDGMENT TO ENFORCE AGAINST THE TRANSEASTERN LENDERS

In addition to the terms of the bonds themselves, the purpose of posting bonds on appeal logically suggests that the bonds be unconditionally released. On December 22, 2009, the Transeastern Lenders posted the Bonds to stay all proceedings to enforce the Final Judgment pending the results of this appeal. As of the entry of the Order on February 11, 2011, there is no longer any judgment that could be enforced against the Transeastern Lenders. No stay of enforcement is needed.

Supersedeas bonds posted pursuant to Rule 7062 of the Federal Rules of Bankruptcy Procedure (and Rule 62 of the Federal Rules of Civil Procedure) are posted as a condition to a "***Stay of Proceedings to Enforce a Judgment***." (emphasis added). Under the Court's local rules, supersedeas bonds serve the purpose of "***staying execution of a money judgment***." S.D. Fla. Local R. 62.1(A) (emphasis added). When the Transeastern Lenders posted the Bonds, they bought a "stay of execution of

the judgment." *U.S. v. Dornbrock*, No. 06-61669-CIV, 2008 WL 2894829, at *1 (S.D. Fla. 2008 May 29, 2008); *see also Advanced Estimating System, Inc. v. Riney*, 171 F.R.D. 327, 328 (S.D. Fla. 1997) (same). With no judgment for the Committee to enforce against the Transeastern Lenders, it is no longer necessary for the Transeastern Lenders to continue to purchase a stay of execution of the Final Judgment.

The circumstances presented here highlight the logic of this conclusion. Following the entry of the Final Judgment imposing liability against them, each Transeastern Lender was faced with a choice of how to proceed while the appeal was pending. Each Transeastern Lender could: (1) post bonds to stay enforcement of the Final Judgment; (2) post cash to the Bankruptcy Court to stay enforcement of the Final Judgment; or (3) force the Committee to seek enforcement of the Final Judgment. Most Transeastern Lenders posted bonds or cash to secure a stay of the enforcement of the Final Judgment, but several Transeastern Lenders did not. Instead, those Transeastern Lenders have been engaged in litigation with the Committee over enforcement of the Final Judgment.

The quashing of the Bankruptcy Court's Final Judgment should treat all Transeastern Lenders the same – regardless of what choice they made when the appeal was commenced. Conditioning the discharge of the bonds on no further appeals being filed, however, puts the Transeastern Lenders that posted bonds or cash in a worse position than those who did not. Despite there being no judgment that can be enforced against any of them, those Transeastern Lenders which posted bonds have the continued burden of paying bonding premiums through the appeal. In contrast, the

Transeastern Lenders that did not post bonds or cash, are freed from the enforcement efforts of the Committee, without incurring any additional costs. The Order should not have the effect of disfavoring those Transeastern Lenders elected to "purchase" a stay while the Final Judgment was the operative legal order regarding their liability.

Requiring the Transeastern Lenders to maintain Bonds when there is no enforceable judgment has the same effect as imposing prejudgment attachment – because there is no operative judgment – against those of the Transeastern Lenders affected by the decision. Prejudgment attachment is only appropriate in extraordinary circumstances when "the right to recover is clear." *Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1554 (S.D. Fla. 1996) (denying the "extraordinary relief" of prejudgment attachment). The Committee cannot show a "clear right to recovery" necessary to obtain prejudgment attachment; therefore it is not entitled to any security in the absence of an enforceable judgment.[7]

## III. DISCHARGE OF THE BONDS IS IN THE BEST INTERESTS OF THE TOUSA ESTATE AND ITS CREDITORS

Delaying discharge of the Bonds potentially comes at a significant expense to the TOUSA estate because the cost of preserving the Bonds may ultimately be charged against the TOUSA estate as an administrative claim. Bankruptcy Rule 8014 provides that costs of an appeal are taxed against the losing party. Among the costs expressly enumerated as taxable are the premiums associated with the

---

[7] Indeed, even if some form of pre-judgment attachment were appropriate, the Committee, not the Transeastern Lenders, would be obligated to post a surety bond in at least double the amount demanded. Fla. Stat. § 76.12. *Frio Ice, S.A. v. SunFruit, Inc.*, 724 F. Supp. 1373, 1379-80 (S.D. Fla. 1989), *rev'd on other grounds*, 918 F.2d 154 (11th Cir. 1990) (denying request for prejudgment attachment in part because the movant failed to prove compliance with the bond requirement of section 76.12).

{M3023760;1}  - 11 -

posting of bonds.  See Fed. R. Bankr. P. 8014 (stating that "the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal . . . **shall** be taxed by the clerk as costs of the appeal in favor of the party entitled to costs under this rule" (emphasis added)).  Assuming the Eleventh Circuit enters an order consistent with this Court's Order, the additional costs of maintaining the Bonds through that appeal will be borne by the TOUSA estate as administrative expenses.

Bond premiums are paid annually but, under the terms of the posted bonds, the Transeastern Lenders will receive a pro rata refund of the bonding premiums and fees upon the release of the bonds.  By way of example, Monarch Alternative Capital LP ("Monarch") – which posted approximately $205 million of the total almost $440 million of posted bonds – paid an annual bonding premium for its Transeastern bonds of approximately $550,000 to renew the bonds in December 2010.  If the bonds were discharged as of the date of the Order, Monarch would receive a refund of over $1500 **per day**, totaling approximately $475,000.[8]  It would also not incur another bonding charge on December 21, 2011.  The daily cost to the Transeastern Lenders – and potentially ultimately to the TOUSA estate – of maintaining the Bonds is real.

The Transeastern Lenders have already spent millions of dollars in direct costs related to the Bonds,[9] which costs will reduce the recoveries for all creditors of TOUSA's estate.  Because discharging the Bonds would protect the TOUSA estate from additional claims for future bonding costs, the line of cases that requires supersedeas bonds to protect judgment creditors are inapposite.  See, e.g., Miami Int'l Realty Co. v.

---

[8]     See Aff. of Robert G. Burns ¶¶ 7-8.

[9]     Id. at ¶¶ 8-9.

{M3023760;1}                                     - 12 -

*Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) ("when setting supersedeas bonds courts seek to protect judgment creditors as fully as possible without irreparably injuring judgment debtors"). Here, discharging the Bonds could provide TOUSA's creditors and estate greater protection by avoiding the accrual of additional taxable administrative costs.[10]

## CONCLUSION

For the foregoing reasons, the Transeastern Lenders request that the Court reconsider and vacate that portion of the Order staying discharge of the Bonds pending resolution of any appeals.

---

[10] For the avoidance of doubt, the Transeastern Lenders reserve the right to seek damages against the TOUSA estate for all costs associated with the litigation against the Transeastern Lenders. No such claims are waived.

{M3023760;1}  - 13 -

Respectfully submitted,

/s/ Nancy A. Copperthwaite

| | |
|---|---|
| Andrew M. Leblanc (*pro hac vice*) | Nancy A. Copperthwaite |
| Alan J. Stone (*pro hac vice*) | AKERMAN SENTERFITT |
| Atara Miller (*pro hac vice*) | SunTrust International Center |
| Patrick Marecki (*pro hac vice*) | One S.E. Third Avenue, 25th Floor |
| MILBANK, TWEED, HADLEY | Miami, Florida  33131 |
|   & McCLOY LLP | Telephone:   305-374-5600 |
| 1 Chase Manhattan Plaza | Telefax:       305-374-5095 |
| New York, NY 10005 | Nancy.Copperthwaite@akerman.com |
| Telephone:   212-530-5000 | |
| Telefax:       212-530-5219 | Michael I. Goldberg |
| | AKERMAN SENTERFITT |
| | Las Olas Centre II, Suite 1600 |
| | 3350 East Las Olas Boulevard |
| | Fort Lauderdale, Florida  33301 |
| | Telephone:   954-463-2700 |
| | Telefax:       954-463-2224 |
| | Michael.Goldberg@akerman.com |

*Counsel for Appellants The Transeastern Lenders*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of February 2011, I electronically filed the foregoing document with the Clerk of the Court of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

/s/ Nancy A. Copperthwaite
Nancy A. Copperthwaite
Florida Bar No. 549428

## TOUSA SERVICE LIST

Patricia A. Redmond, Esq.
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
150 West Flagler Street, Suite 2500
Miami, FL 33130
Phone: 305-789-3553
Fax: 305-789-3395
*predmond@swmwas.com*

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Phone: 305-374-7580
Fax: 305-374-7593
*sbaena@bilzin.com*

Allan E. Wulbern, Esq.
Smith, Hulsey & Busey
225 Water Street, Suite 2800
Jacksonville, Florida 32202
Phone: 904-359-7700
Fax: 904-359-7708
*AWulbern@smithhuylsey.com*

Lawrence S. Robbins, Esq.
Robbins, Russell, Englert, Orseck,
Untereiner & Sauberg, LLP
1801 K Street, N.W., Suite 411-L
Washington, DC 20006
Phone: 202-775-4500
Fax: 202-775-4510
*lrobbins@robbinsrussell.com*

Beth A. Williams, Esq.
Daniel T. Donovan, Esq.
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, D.C. 20005
Phone: 202-879-5000
Fax: 202-879-5200
*Beth.Williams@kirkland.com*

Amy D. Harris, Esq.
Strichter, Riedel, Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
Phone: 813-229-0144
Fax: 813-229-1811
*AHarris.ecf@srbp.com*

Ceci Culpepper Berman, Esq.
Fowler White Boggs P.A.
501 E. Kennedy Boulevard, Suite 1700
P.O. Box 1438
Tampa, FL 33602
Phone: 813-222-2031
Fax: 813-384-2842
*CBerman@fowlerwhite.com*

Paul A. Avron, Esq.
Berger Singerman, P.A.
200 S. Biscayne Boulevard, Suite 1000
Miami, Florida 33131
Phone: 305-755-9500
Fax: 305-714-4340
*Pavron@bergersingerman.com*

Stephen M. Mertz, Esq.
Aaron Van Oort, Esq.
Melina K. Williams, Esq.
Faegre & Benson, LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: 612-766-7000
Fax: 612-766-1600
*SMertz@faegre.com*

# **APPENDIX A**

As used throughout the Transeastern Lenders' Brief, the following lenders on a $450,000,000 Credit Agreement dated as of August 1, 2005 compose the "<u>Transeastern Lenders</u>":

3V Capital Management, LLC / 3V Capital Master Fund Ltd.; Atascosa Investments, LLC; Aurum CLO 2002-1 Ltd.; Bank of America, N.A.; Bear Stearns Investment Products Inc.; Burnet Partners, LLC; Deutsche Bank Trust Company Americas; Flagship CLO III; Flagship CLO IV; Flagship CLO V; Gleneagles CLO Ltd.; Goldman Sachs Credit Partners, L.P.; Grand Central Asset Trust, CED Series; Grand Central Asset Trust, HLD Series; Grand Central Asset Trust, SOH Series; Hartford Mutual Funds, Inc., on behalf of The Hartford Floating Rate Fund by Hartford Investment Management Company, their Sub-Advisor; Highland CDO Opportunity Fund, Ltd.; Highland Credit Opportunities CDO Ltd.; Highland Floating Rate Advantage Fund; Highland Floating Rate LLC; Highland Legacy Limited; Highland Loan Funding VII, LLC; Highland Offshore Partners, L.P.; JPMorgan Chase Bank, N.A.; Jasper CLO, Ltd.; LL Blue Marlin Funding LLC; Liberty CLO, Ltd.; Merrill Lynch Credit Products LLC; Monarch Master Funding Ltd (f/k/a Quadrangle Master Funding Ltd.); Ocean Bank; Rockwall CDO, Ltd.; Silver Oak Capital LLC; Stedman CBNA Loan Funding LLC; The Foothills Group, Inc.; Van Kampen Dynamic Credit Opportunities Fund; Van Kampen Senior Income Trust; Van Kampen Senior Loan Fund; and Wells Fargo Bank, N.A.

Case 0:10-cv-60508-ASG Document 30-32-1 Entered on FLSD Docket 03/02/2011 Page 17 of 17