# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case No. 10-60017-CIV-GOLD**
L.T. Nos. 08-10929-JKO & 08-01435-JKO

In re:

TOUSA, INC., *et al.*,

      Debtors.

3V CAPITAL MASTER FUND LTD., *et al.*

      Appellants,

vs.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TOUSA, INC., *et al.*,

      Appellees,

and

TOUSA, INC., *et al.*,

      Appellees.

# TRANSEASTERN LENDERS' REPLY
# IN FURTHER SUPPORT
# OF THEIR MOTION FOR LIMITED REHEARING
# ON THE CONDITIONAL RELEASE OF THE POSTED BONDS

The Transeastern Lenders[1] posted Bonds to stay the execution of the Bankruptcy Court's Final Judgment pending the *Transeastern Lenders' appeal* of the Final Judgment. The Transeastern Lenders succeeded in their appeal and this Court quashed the Final Judgment as to them. While this Court granted the Transeastern Lenders complete relief on the merits of their appeal, it conditioned the discharge of their Bonds on the resolution of future appeals. Given the lack of an executable judgment against them, the Transeastern Lenders moved this Court to reconsider its conditional release of the Bonds and order an unconditional discharge of the Bonds, consistent with the terms of the Bonds themselves and the governing case law.

In opposition, the Committee argues that the Bonds should not be discharged because of some theoretical possibility that this Court's Order quashing the Final Judgment as to the Transeastern Lenders may be reversed if the Committee is successful in its subsequent appeal of the Order to the Eleventh Circuit. However, the fact that the Committee may appeal the Order to the Eleventh Circuit does not change the calculus. The parties are not, as the Committee asserts, at an "interim stage" of the Transeastern Lenders' appeal process. (Opp'n of the Official Comm. of Unsecured Creditors to the Transeastern Lenders' Mot. for Unconditional Release of the Posted Bonds ("Opp.") at 2 (D.E. 133).) The Order closed the Transeastern Lenders' appeal of the Final Judgment. Any appeal by the Committee from this Court's Order is separate and apart from the Transeastern Lenders' appeal from the Bankruptcy Court's Final Judgment, for which the Bonds were posted.

---

[1] Capitalized terms not defined herein shall have the meaning given in the Transeastern Lenders' Motion for Limited Rehearing on the Conditional Release of the Posted Bonds (Case No. 10-cv-60017-ASG (D.E. 132)).

I. **THE TERMS OF THE BONDS REQUIRE THEIR DISCHARGE NOW THAT THE TRANSEASTERN LENDERS' APPEAL FROM THE FINAL JUDGMENT IS CLOSED**

The Committee does not dispute that the proper legal test for determining if the Bonds should be discharged is whether the Transeastern Lenders "substantially prevailed" on their appeal. (Opp. at 2.) Nor does the Committee dispute that the Transeastern Lenders did in fact substantially prevail. Based on clear-cut law and uncontested facts, consideration of the Committee's opposition should rest at this stage. To avoid the necessary implications of the Order, the Committee argues that a determination of whether the Transeastern Lenders have substantially prevailed should not be made now because their appeal is at a purported "interim" stage. (*Id.*) In fact, the Transeastern Lenders' appeal of the Final Judgment is ***not*** at an interim stage; it has concluded, and the terms of the Bonds require their unconditional discharge.

As set forth in the Transeastern Lenders' Motion (Motion at 4-7), supersedeas bonds are maintained after decisions on appeal only when liability is **affirmed**. *See, e.g., Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1071 (10th Cir. 2008) (bond still enforceable where appellant's liability was affirmed); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572, 1576 (Fed. Cir. 1991) (surety remained bound where liability was affirmed); *Franklinville Realty Co. v. Arnold Constr. Co.*, 132 F.2d 828, 829 (5th Cir. 1943) (refusing to discharge surety because "the judgment on the former appeal was not a judgment of reversal but one of affirmance with a reversal limited to . . . whether the judgment it had obtained should be for the same or a less sum"). In such cases, unlike here, there is no doubt that the defendant will have to pay some amount of damages, even if a new trial is required to quantify those damages. In contrast, if a judgment is

- 2 -

reversed and remanded for a new trial on liability, the bonds are released. *See, e.g., Neeley v. Bankers Trust Co. of Texas*, 848 F.2d 658, 660 (5th Cir. 1988) (discharging supersedeas bond where the award of money damages was vacated). The cases do not support keeping bonds in place when the liability finding as to the posting defendant is reversed in its entirety by an appellate court. The fact that the Order may be subsequently reviewed by the Eleventh Circuit is of no consequence. Supersedeas bonds are routinely discharged when a judgment is reversed on appeal despite the fact that a court's decision may be subsequently appealed to a higher court. *See, e.g., Snyder v. Phelps*, 580 F.3d 206, 216 n.7 (4th Cir. 2009) (noting that "we discharge the various bonds as a corollary of reversing the judgment").

The Committee selectively quotes the terms of the Bonds in an effort to incorrectly suggest that the Bonds contemplate remaining in effect during the pendency of any subsequent appeals. The Bonds provide no such thing. The Bonds state that the Transeastern Lenders bind themselves for payment of their "pro rata share[s] of the Final Judgment, now appealed from, together with interest and costs, including, as may be ordered, attorneys' fees and reasonable expenses, ***if the Final Judgment is affirmed or this appeal is dismissed***." (*See* Exhibit A, a redacted copy of a supersedeas bond filed by a Transeastern Lender in the Bankruptcy Court (emphasis added).) As further noted in the Transeastern Lenders' Motion, the terms of the Bonds provide that this obligation is to be void if the Transeastern Lenders prosecute "***this appeal***" to effect. (*Id.* (emphasis added).) As used in the Bonds, "this appeal" has only

one meaning – the Transeastern Lenders' appeal from the Bankruptcy Court's Final Judgment.[2]

The terms of the Bonds conform with the Bankruptcy Court Bonds Order, which states that the Transeastern Lenders' Bonds are a condition of the stay of execution against the Transeastern Lenders "***pending their appeal from the Final Judgment***." (Bankruptcy Court Bonds Order at 1 (emphasis added).) The Bankruptcy Court Bonds Order is logically limited to the Transeastern Lenders' appeal from the Final Judgment. The Bankruptcy Court Bonds Order does not secure a stay of execution of a different judgment on a separate appeal taken by another party, which is exactly what the Committee is urging. When the Court quashed the Final Judgment and closed the Transeastern Lenders' appeal, it triggered the provision of the Bonds requiring their discharge. A subsequent appeal by the Committee of this Court's Order to the Eleventh Circuit is clearly not covered by the terms of the Bonds.

---

[2] The Committee's out-of-context citation to the Bonds' reference that "further appeals to the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court may ultimately be taken," is deceptive. (Opp. at 3, n.1.) Taken as a whole, that provision refers to an occasion where "the Principal, in its capacity as a Senior Transeastern Lender" takes *its* appeal of the Final Judgment to a higher court, having lost at the District Court level. It is consistent with the other provisions of the Bonds: if the Transeastern Lenders were not successful in their appeal from the Final Judgment at the District Court level, the Bonds could continue to purchase a stay of execution of the Final Judgment while the Transeastern Lenders pursued their appeal in a higher court. The Bonds do not contemplate providing security for a subsequent appeal to a higher court by the Committee.

## II. THE BONDS SHOULD BE DISCHARGED BECAUSE THE COMMITTEE IS NOT ENTITLED TO SECURITY UNDER THE CURRENT OPERATIVE JUDGMENT

The Committee, in a sleight of hand, asserts that "[i]n the forthcoming appeal, the Eleventh Circuit will *review the bankruptcy court's judgment* without deference to this Court's Order." (Opp. at 5 (emphasis added).) In fact, as the case cited by the Committee makes plain, the Eleventh Circuit will conduct a *de novo* review of ***this Court's Order***, not the Bankruptcy Court's Final Judgment. (Opp. at 5 (citing *McMillan v. Joseph Decosimo & Co. (In re Das A. Borden & Co.)*, 131 F.3d 1459, 1462 (11th Cir. 1997) ("As the second court of review in this bankruptcy matter, this court's review of the district court is entirely *de novo*.").) *See also Baker v. Tardif (In re Baker)*, 590 F.3d 1261, 1263 (11th Cir. 2009) ("as the second court of review . . . we review *de novo* the legal determinations of the district court"). The operative judgment to be reviewed by the Eleventh Circuit is the one issued by this Court. That it is this Court's Order, not the Bankruptcy Court's Final Judgment, which will be reviewed on the Committee's appeal to the Eleventh Circuit, reinforces the Transeastern Lenders' position that the Bonds should be discharged because the Final Judgment is no longer enforceable against them. (Mot. at 9-11.)

In any event, the standard of review applied by the Eleventh Circuit is irrelevant. The Committee offers no support for its novel argument that a prevailing party's supersedeas bonding obligations should be extended based on an appellate

- 5 -

court's standard of review.³ This Court's Order is the operative judgment unless and until it is reversed. The Committee is not entitled to security to stay the enforcement of a judgment that it fully acknowledges is no longer enforceable.⁴

The Committee next argues that the Transeastern Lenders should be required to maintain the Bonds to protect the Committee from the risk of non-collection because, but for the Bonds, the Committee could already have collected on the Final Judgment. (Opp. at 6.) This argument defies logic. Had the Committee already collected on the Final Judgment, the Transeastern Lenders would now move to obtain restitution of the amounts paid to the Committee under the Final Judgment. *See, e.g., Bank of U.S. v. Bank of Wash.*, 31 U.S. 8, 17 (1832) ("On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost."); *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 402 F.3d 522, 527 (5th Cir. 2005) (noting that "virtually all reported court decisions have adhered to the principles" of restitution after reversal); *Atlanta Journal & Constitution v. City of Atlanta Dept. of Aviation*, 347 F. Supp. 2d 1310, 1314 (N.D. Ga. 2004) (a party has a right "to be restored to what it had lost upon a judgment of reversal."); Restatement (First) of Restitution, § 74 ("A person who has conferred a benefit upon another in

---

³ The cases cited by the Committee stand for the broad and unremarkable proposition that courts have the inherent authority to fashion their decrees. (Opp. at 4.) The Transeastern Lenders do not, and did not, argue that this Court exceeded its jurisdiction in conditionally discharging the Bonds.

⁴ In fact, the Committee has halted its efforts to enforce the Final Judgment against a Transeastern Lender that did not post a bond or cash to stay the Final Judgment. (See Notice of Cancellation of Deposition (Case No. 08-01435-JKO (D.E. 1172)).)

- 6 -

compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside."). In such a circumstance, the Committee would now be faced with a choice – either repay the Transeastern Lenders or seek leave to post a bond to stay the execution of the Order pending the Committee's appeal to the Eleventh Circuit. Maintaining the Bonds would not, as the Committee alleges, maintain the *status quo* but instead would provide the Committee with additional protection to which it is not entitled.

The Committee's baseless assertion that the Bonds are essential to its ability to execute the Final Judgment if the Order were reversed on appeal is a red herring. Its threadbare claim that the "financial condition [of the Transeastern Lenders] in light of the worldwide economic recession is unknown," (Opp. at 6), is legally irrelevant. It is also wholly insufficient to impose on the Transeastern Lenders the significant financial burden of keeping the Bonds in place while the Committee works its way through what it predicts will be a lengthy appellate process. The Committee has never offered *any* evidence – either here or in the Bankruptcy Court – regarding the financial condition of *any* Transeastern Lender. What the uncontroverted facts before this Court do show is that the Transeastern Lenders posted cash collaterized Bonds in the aggregate amount of almost $440 million, and cash in the amount of more than $37 million to secure stays of execution of the Final Judgment. The disbursement of nearly half a billion dollars in cash is indisputable proof that the Transeastern Lenders have the financial ability to satisfy a sizeable judgment should there ever be one. Assuming, *arguendo*, that an individual Transeastern Lender may not have sufficient assets to

- 7 -

satisfy a future judgment does not constitute just cause to require *all* Transeastern Lenders to maintain the Bonds for the indeterminate duration of future appeals.

Furthermore, the Committee's attempt to trivialize the cost to the Transeastern Lenders of maintaining the Bonds is belied by the facts. As the Committee itself recognizes (Opp. at 7), the Bond premium costs to the Transeastern Lenders are in the millions of dollars. Moreover, while the Transeastern Lenders have now completely prevailed on the merits, they continue to suffer irreparable harm on a daily basis through the inability to invest the hundreds of millions of dollars that have been pledged as collateral or posted with this Court to obtain the stay. We submit that the Court should not impose this tremendous cost on the Transeastern Lenders for the unforeseeable future in the absence of an enforceable judgment against them.

Finally, the Committee argues that releasing the Bonds is not in the financial interest of the estate because it is within the court's discretion to tax bond premiums on the losing party on appeal and that they likely would not be taxed here, where the Committee has been "defending in good faith" the Bankruptcy Court's Final Judgment. (Opp. at 7.) The single case cited by the Committee does not support this proposition, which is contradicted by the plain language of Fed. R. Bankr. P. 8014. The Committee relies on Campbell v. Rainbow City, 209 F. App'x 873, 875 (11th Cir. 2006), but in Campbell, unlike here, the prevailing party moved for costs in the circuit court, which were awarded, and also moved for costs in the district court. The district court declined to tax the bond premiums against the losing party because it had not required Rainbow City to obtain the bonds and because the bond premiums were not specifically included in the list of taxable costs enumerated in 28 U.S.C. § 1920. *Id.* In reviewing

the district court's order declining to tax the losing party with the bond premiums, the Eleventh Circuit rejected Campbell's argument that Fed. R. App. P. 39(a) required the court to tax the bond premiums because it provides that "the enumerated costs 'are taxable,' not that they 'must be taxed.'" *Id.* This is in direct contrast to Fed. R. Bankr. P. 8014 which provides that "costs **shall** be taxed against the losing party on appeal" and specifically states that "premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal . . . **shall** be taxed by the clerk as costs of the appeal in favor of the party entitled to costs." (emphasis added.) Under the mandatory terms of Fed. R. Bankr. P. 8014, the Bond premiums paid by the Transeastern Lenders to date are taxable now; the Transeastern Lenders do not have to wait to prevail on the Committee's appeal to the Eleventh Circuit to recoup those Bond premiums. *See, e.g., Coleman v. State of Ala.*, 827 F.2d 1469, 1474 (11th Cir. 1987) (statutory language is "of an unmistakably mandatory character" when it requires "that certain procedures 'shall' 'will' or 'must' be employed." (citing *Hewitt v. Helms*, 459 U.S. 460, 472-73 (U.S. 1983)). Accordingly, discharging the Bonds, regardless of whether there will be a subsequent appeal by the Committee to the Eleventh Circuit, would likely be in the financial interests of the TOUSA estate.

## **CONCLUSION**

For the foregoing reasons, the Transeastern Lenders request that the Court reconsider and vacate the portion of the Order staying discharge of the Bonds pending resolution of any further appeals, and order instead that all Bonds and cash

- 9 -

deposited by the Transeastern Lenders in response to the Bankruptcy Court's Order on Motion for Stay Pending Appeal be unconditionally discharged.

Respectfully submitted,

| | |
|---|---|
| | /s/ Nancy A. Copperthwaite |
| Andrew M. Leblanc (*pro hac vice*) | Nancy A. Copperthwaite |
| Alan J. Stone (*pro hac vice*) | AKERMAN SENTERFITT |
| Atara Miller (*pro hac vice*) | SunTrust International Center |
| Patrick Marecki (*pro hac vice*) | One S.E. Third Avenue, 25th Floor |
| MILBANK, TWEED, HADLEY | Miami, Florida  33131 |
| & McCLOY LLP | Telephone: 305-374-5600 |
| 1 Chase Manhattan Plaza | Fax:  305-374-5095 |
| New York, NY 10005 | Nancy.Copperthwaite@akerman.com |
| Telephone:  212-530-5000 | |
| Fax:  212-530-5219 | Michael I. Goldberg |
| | AKERMAN SENTERFITT |
| | Las Olas Centre II, Suite 1600 |
| | 3350 East Las Olas Boulevard |
| | Fort Lauderdale, Florida  33301 |
| | Telephone: 954-463-2700 |
| | Fax:  954-463-2224 |
| | Michael.Goldberg@akerman.com |

*Counsel for Appellants The Transeastern Lenders*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 3rd day of March 2011, I electronically filed the foregoing document with the Clerk of the Court of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

/s/ Nancy A. Copperthwaite
Nancy A. Copperthwaite
Florida Bar No. 549428

## SERVICE LIST

Patricia A. Redmond, Esq.
Stearns Weaver Miller Weissler
Alhadeff & Sitterson, P.A.
150 West Flagler Street, Suite 2500
Miami, FL 33130
Phone: 305-789-3553
Fax: 305-789-3395
*predmond@swmwas.com*

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Phone: 305-374-7580
Fax: 305-374-7593
*sbaena@bilzin.com*

Allan E. Wulbern, Esq.
Smith, Hulsey & Busey
225 Water Street, Suite 2800
Jacksonville, Florida 32202
Phone: 904-359-7700
Fax: 904-359-7708
*AWulbern@smithhuylsey.com*

Lawrence S. Robbins, Esq.
Robbins, Russell, Englert, Orseck,
Untereiner & Sauberg, LLP
1801 K Street, N.W., Suite 411-L
Washington, DC 20006
Phone: 202-775-4500
Fax: 202-775-4510
*lrobbins@robbinsrussell.com*

Beth A. Williams, Esq.
Daniel T. Donovan, Esq.
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, D.C. 20005
Phone: 202-879-5000
Fax: 202-879-5200
*Beth.Williams@kirkland.com*

Amy D. Harris, Esq.
Strichter, Riedel, Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
Phone: 813-229-0144
Fax: 813-229-1811
*AHarris.ecf@srbp.com*

Ceci Culpepper Berman, Esq.
Fowler White Boggs P.A.
501 E. Kennedy Boulevard, Suite 1700
P.O. Box 1438
Tampa, FL 33602
Phone: 813-222-2031
Fax: 813-384-2842
*CBerman@fowlerwhite.com*

Paul A. Avron, Esq.
Berger Singerman, P.A.
200 S. Biscayne Boulevard, Suite 1000
Miami, Florida 33131
Phone: 305-755-9500
Fax: 305-714-4340
*Pavron@bergersingerman.com*

Stephen M. Mertz, Esq.
Aaron Van Oort, Esq.
Melina K. Williams, Esq.
Faegre & Benson, LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: 612-766-7000
Fax: 612-766-1600
*SMertz@faegre.com*

1

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | |
|---|---|
| TOUSA, INC., *et al.*, | Chapter 11 Cases |
| Debtors. | Case No. 08-10928-JKO |
| | Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TOUSA, INC., *et al.*, | Adv. Pro. No. 08-01435 |
| Plaintiffs-Appellees, | |
| v. | 02BSBFP8579 |
| CITICORP NORTH AMERICA, INC., *et al.*, | _____ Bond No. _____ |
| Defendants-Appellants. | |
| 3V CAPITAL MASTER FUND LTD., *et al.*, | |
| Counterclaim and Crossclaim Plaintiffs-Appellants, | |
| v. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TOUSA, INC., TOUSA, INC., TOUSA HOMES, L.P., TE/TOUSA, LLC, TE/TOUSA MEZZANINE TWO, LLC, TE/TOUSA MEZZANINE, LLC, TE/TOUSA SENIOR, LLC, EH/TRANSEASTERN, LLC, TOUSA HOMES FLORIDA, L.P. | |
| Counterclaim and Crossclaim Defendants-Appellees. | |

## SUPERSEDEAS BOND

Page 1 of 3

#4813-8350-9509v1
2180973_1

*KNOW ALL BY THESE PRESENTS, THAT* we, Defendant-Appellant, Counterclaim and Crossclaim Plaintiff-Appellant, and Principal (collectively, the "Principal"), solely in its capacity as a Senior Transeastern Lender (and not in any other capacity, whether as First Lien Lender or Second Lien Lender or otherwise) and ⟩ a corporation incorporated under the laws of the State of , as Surety (the "Surety"), are held and firmly bound under the provisions of the Amended Final Judgment entered on October 30, 2009 [D.E. 721, which amends and replaces the Final Judgment entered on October 13, 2009, D.E. 659] (the "Final Judgment") in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Court") in the maximum aggregate sum of lawful money of the United States of America for which payment, well and truly to be made, we bind ourselves, our successors and assigns, jointly and severally, firmly by these presents for the payment of (1) the Principal's pro rata share of the Final Judgment, now appealed from, together with interest and costs, including, as may be ordered, attorneys' fees and reasonable expenses, if the Final Judgment is affirmed or this appeal is dismissed, or (2) if the Final Judgment is modified, the Principal's pro rata share of the amount awarded by the appellate court.

*WHEREAS*, this Bond is filed in accordance with the requirements of (1) the Court and (2) the United States District Court for the Southern District of Florida, Miami Division, under its November 20, 2009, Order Granting in Part Motions for Stay and Closing Cases, as security for a stay of execution pending appeal in the above-captioned action under Rule 62 of the Federal Rules of Civil Procedure, Rule 7062 of the Federal Rules of Bankruptcy Procedure, Local Rule 62.1 of the United States District Court for the Southern District of Florida, and Rule 8 of the Federal Rules of Appellate Procedure.

*AND WHEREAS*, on October 30, 2009, in the above-captioned action, Final Judgment was rendered against Defendant;

*AND WHEREAS* the Principal, in its capacity as a Senior Transeastern Lender, timely filed a Notice of Appeal from the Final Judgment to the United States District Court for the Southern District of Florida [D.E. 772, 747, 670], and that further appeals to the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court may ultimately be taken;

*AND WHEREAS*, the Principal timely applied for and obtained an order from the Court staying enforcement of such Final Judgment during the pendency of the appeal upon posting of this Supersedeas Bond [D.E. 723].

*NOW THEREFORE*, the condition of the above obligation is such that if the Principal shall prosecute this appeal to effect and (1) shall satisfy its pro rata share of the Final Judgment, together with interest and costs, including, as may be ordered, attorneys' fees and reasonable expenses, if the Final Judgment is affirmed or this appeal is dismissed, or (2) shall satisfy its pro rata share of the Final Judgment as modified on appeal, together with such interest and costs as may be adjudged and awarded on appeal, then the above

obligation is to be void; otherwise it shall remain in full force and effect.

**PROVIDED, HOWEVER**, that in no event shall the liability of the Surety exceed the maximum aggregate sum of

lawful money of the United States of America, which sum may not be increased without the express written consent of the Surety. Except as may be provided for in any separate instrument to which the Surety and another Defendant-Appellant are parties, the Surety shall not be liable for any Defendant-Appellant other than the Principal, solely in its capacity as a Senior Transeastern Lender, nor shall the Surety's liability be increased or otherwise affected hereunder in any way whatsoever as a result of the performance or nonperformance of any party or surety therefor other than the Principal.

12/10/09
Date

12/15/09
Date